# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CR-22-071-RAW |
| | ) | |
| NICK ALLEN MABRAY and | ) | |
| GENE MABRAY | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the court is the motion in limine of defendant Nick Allen Mabray.  On August 11, 2022, the government filed a notice (#85) regarding proposed evidence pursuant to Rule 404(b) F.R.Evid.  The present motion (#95) was filed on September 26, 2022 and was directed toward the government's original notice.  On January 9, 2023, the government filed an amended Rule 404(b) notice (#108).  The defendant has not filed an amended motion, but the government has responded (#107) to the motion.

Defendants (who are father and son) were indicted by a federal grand jury of (1) conspiracy to commit assault with a dangerous weapon in Indian Country, (2) assault with a dangerous weapon in Indian Country, and (3) use of a firearm during a crime of violence.

As to the charges in the indictment, the government contends that the evidence will show that on January 6, 2021, J.H. was working for RCB Bank.  The bank had previously foreclosed on the Mabray ranch.  J.H. came upon the property to inspect it.  As he was driving away, the defendants entered the property in their truck, and intentionally collided

with J.H.'s truck.  Nick Mabray exited his truck, approached J.H.'s truck and pointed a gun at J.H.  Gene Mabray grabbed J.H. and forced him from his truck.

Gene Mabray removed J.H.'s 9mm firearm from J.H.'s pocket along with his cell phone.  Nick Mabray then struck J.H. with his rifle and forced him to the ground.  Nick Mabray continued to hit J.H. and struck him in the head with his foot.  Nick Mabray placed his foot on J.H.'s neck and jaw and threatened to kill him.  After some time, Odom Hoffman, [also a named co-defendant who has entered a guilty plea], a relative of the Mabrays, arrived. He instructed the Mabrays to kill J.H. and dump his body and truck in the lake, while Nick Mabray was still holding J.H. on the ground at gunpoint.  This conversation went on for several minutes.  Hoffman then took Nick Mabray's rifle and some papers from the Mabrays' truck.  Hoffman then left the property.  Nick Mabray then moved J.H. to the Mabrays' truck. Nick Mabray instructed J.H. that the sheriff was on his way, that the Mabrays intended to say this was an accident, and that J.H. would be arrested for trespassing.

In the amended notice, the government seeks to introduce evidence regarding purported conduct on July 5, 2020.  Tim Cutsinger, an employee of RCB Bank, was driving his vehicle in Cherokee, Oklahoma, searching for a tractor that the bank was attempting to repossess from the Mabrays, who had purchased the tractor with a loan from the bank. Cutsinger spotted a tractor in a field and approached it, determining it was a different tractor. As Cutsinger was driving away from the field, he saw a white truck chasing after him.

2

At a stoplight, Nick Mabray exited the white truck and began to punch and kick Cutsinger's car. As Cutsinger backed up, Nick Mabray threw rocks at Cutsinger's car. Cutsinger and the occupants of his vehicle assert Nick Mabray was wearing brass knuckles while punching Cutsinger's car. After driving away, Cutsinger observed a silver truck (which Cutsinger had previously observed parked next to the Mabrays' truck) chasing him, which ultimately ran him off the road into a ditch. The government asserts the silver truck belonged to Odom Hoffman.

The government also seeks to introduce portions of tape recorded phone calls. In 2019, Nick Mabray and Dana Mabray were involved in divorce proceedings. Dana Mabray began recording conversations between the two. In a call from April, 2019, Nick Mabray stated "[He] doesn't have a problem killing someone. All it is [is] just a life." He goes on to say that "[He] can never be in jail or he would already be there. People like me get shit done." The government asserts that "[t]hese statements are a contradiction with Nick's interview with the FBI in which he told agents that he was unable to kill anyone." (#108 at page 4 of 11 in CM/ECF pagination).

In a phone call from June of 2019, Nick Mabray (evidently referring to a firearm) says he "always has something on [him]." "There ain't nobody gonna get the drop on me or I'll shoot their ass." "I've always got something on me and it's within my hand's distance." "Ill shoot him right between his fucking eyes." "If he had anything, them son of a bitches would not be here." "You want me to tell you why they are here. They're my fucking cows and he

goddamned knows it.  Or they would not be here.  And I'll kill their goddamned ass and he knows it."  The government represents that these latter statements relate to the Maybrays' financial troubles in the cattle business.

Rule 404(b) is one of inclusion, rather than exclusion, unless the evidence is introduced for the impermissible purpose (i.e., propensity) or is unduly prejudicial.  *See United States v. Reynoso,* 861 Fed.Appx. 204, 208 (10th Cir.2021).  The court must consider (1) whether the evidence is offered for a proper purpose; (2) its relevance; (3) whether the probative value of the evidence is substantially outweighed by its prejudicial effect; and (4) a limiting instruction if the defendant so requests.  *Huddleston v. United States,* 485 U.S. 681, 691 (1988).

The Tenth Circuit distinguishes between evidence that is extrinsic or intrinsic to the charged crime.  Evidence is "intrinsic" when it is directly connected to the factual circumstances of the crime and provides contextual or background information to the jury.  Evidence is "extrinsic" when it is extraneous and is not connected or blended with the factual circumstances of the charged offense.

Evidence is intrinsic when it is inextricably intertwined with the charged conduct or the evidence is entirely germane background information, directly connected to the factual circumstances of the crime.  *U.S. v. Ogden,* 2021 WL 789861 (E.D.Okla.2021).  If the evidence is intrinsic, Rule 404(b) is not even applicable, i.e., it is admissible without

4

regarding to Rule 404(b)'s prohibitions. *U.S. v. Ewton,* 2022 WL 1504808 (E.D.Okla.2022). Here, the government concedes the proposed evidence is extrinsic.

Considering the motion and the response, the court will allow introduction of the Cutsinger incident.  *See, e.g., United States v. Haukaas,* 172 F.3d 542, 544 (8th Cir.1999)(affirming admission in an assault prosecution of Rule 404(b) evidence of defendant's previous assault of a different victim as relevant to government's proof of defendant's criminal intent).  In the case at bar, the two alleged incidents were within six months of each other.

The evidence is offered for a proper purpose under Rule 404(b)(2), in this case to prove motive or intent.  The court also finds it is relevant.  "In the context of Rule 404(b) relevance, an extrinsic act's similarity to the charged offense is the lynchpin [sic] of the analysis." *United States v. Tennyson,* 13 F.4th 1049, 1056 (10th Cir.2021).[1]  In the court's view, the probative value of the evidence is not substantially outweighed by its prejudicial effect.  The July 5, 2020 incident demonstrates sensitivity to perceived trespassing on the defendants' part and/or fear of losing possession of property under foreclosure.

---

[1]This should be distinguished from using a felony conviction for impeachment under Rule 609(a)(1) F.R.Evid.  In that situation, "the similarity of the current charged crime to the prior conviction weighs against admitting the prior conviction for impeachment if the crimes are similar.  The greater the similarity of the charged crime to the past crime, the higher the likelihood that a jury will be tempted to infer criminal propensity, rather than use the information for its intended purpose – impeachment of credibility." *United States v. Ahaisse,* 2021 WL 2290574, * 3 (N.D.Okla.2021).  Under Rule 404(b), by contrast, other act evidence must not be excluded whenever a propensity inference can be drawn; rather, Rule 404(b) excludes the evidence if its relevance to another proper purpose is established *only* through the forbidden propensity inference.  *United States v. Washington,* 615 F.Supp.3d 1260, 1268 (N.D.Okla.2022).

Defendant contends the two events are not similar "because RCB did have the right to be on the property on July 5, 2020 [and] they were just there to harass" the Mabrays. (#95 at 4. From the body of the motion, this sentence appears intended to state that the bank did <u>not</u> have the right to be present on the property. If, as to either incident, defendant intends to assert trespassing by the bank employee, the general law appears to be that a trespasser must first be requested to depart and only upon refusal is <u>reasonable</u> force permitted. The government contends the bank had authority to be present by court order. This issue will be addressed at the pretrial conference, and the parties are directed to confer beforehand.

As to the recorded phone calls, the court preliminarily finds them excludable as unfairly prejudicial. No shots were fired in either the events involved in the indictment or the Cutsinger incident. Should the defendant seek to rely on Nick Mabray's statement in his FBI interview that he was unable to kill anyone, the government might be allowed to introduce a portion of the recorded calls as rebuttal.

It is the order of the court that the motion in limine of the defendant Nick Allen Mabray (#95) is hereby granted in part and denied in part. The July 5, 2020 incident is preliminarily ruled admissible, while the phone conversations of April and June, 2019 are preliminarily ruled inadmissible.

The motion is also denied in seeking to preclude the parties from referring to the complaining witnesses as "victims."

ORDERED THIS 17th DAY OF APRIL, 2023.

_____

**RONALD A. WHITE**
**UNITED STATES DISTRICT JUDGE**